No. 7729.

WOODBURN SARVEN WHEEL COMPANY *v.* PHILBROOK.

CONTRACT. — *Inspection of Timber.* — *Vendor and Vendee.* — *Evidence.* — Where a vendor sold and shipped timber to his vendee, it was competent for the latter to agree to take such timber on the representations of the former as to the quality and quantity shipped by him, and, in a suit for the value of the timber, evidence tending to prove such agreement is admissible.

PRACTICE. — *Submission of Interrogatories.* — Where, on the trial, a court refuses to submit interrogatories to the jury, if, on appeal, the applicability of such interrogatories to any material portion of the evidence is not made apparent, it will be presumed that the court did not err in refusing to submit them to the jury.

From the Marion Superior Court.

*G. H. Chapman* and *U. J. Hammond,* for appellant.
*W. W. Herod* and *F. Winter,* for appellee.

NIBLACK, J.—This was an action by John H. Philbrook against the Woodburn Sarven Wheel Company to recover a balance claimed to be due on five car-loads of timber used in the manufacture of buggies and other similar vehicles.

The defendant answered in five paragraphs :

1st. Payment ;

2d. In general denial ;

3d. That the timber was purchased under a special contract, by which it was to be shipped by the plaintiff to the defendant, at Indianapolis ; and there to be inspected and classified by the latter, and to be paid for according to such inspection and classification ; that, upon an inspection and classification of such timber by the defendant, the sum of $15.19 was found to be due to the plaintiff, which the defendant had offered to pay ; but which the plaintiff had refused to receive.

4th Setting up substantially the same facts as the third paragraph, with an offer to confess judgment for $15.19.

5th. A warranty that each car contained certain amounts and qualities of timber, and a breach of such warranty.

In addition to the general denial to the special paragraphs of the answer, the plaintiff replied specially that he had contracted with the defendant to sell it certain timber, at Martinsville, where he resided, and that the defendant was to inspect all said timber at Martinsville, by an agent stationed at that place ; that the defendant was to receive the timber at Martinsville, and to pay for the same there according to such inspection, and not at Indianapolis ; that, under such contract, the defendant sent one Renton to Martinsville to inspect, receive and pay for said timber ; that said Renton inspected, received and paid for all said timber at Martinsville, which the plaintiff had sold to the defendant prior to the shipment of the five car-loads in controversy, none of such timber being re-inspected at Indianapolis ; that, before the shipment of the timber in suit, the defendant informed

the plaintiff that it could not keep Renton any longer at Martinsville, and requested the plaintiff to inspect the remaining timber according to the same standard of classification that Renton had used in the inspection made by him, and ship it to Indianapolis; that the plaintiff complied with that request, and thereupon did inspect the timber in controversy, according to the standard of classification used by Renton, and ship it to the defendant at Indianapolis, and that, according to the Renton standard of classification, the five cars contained the respective quantities and qualities of timber charged for in the bill of particulars accompanying the complaint.

There was a verdict and judgment for the plaintiff for $350 at special term, where, by a motion for a new trial, various questions were raised upon the evidence. Upon an appeal to the general term this judgment was affirmed.

The following facts may be considered as established by the evidence: That the plaintiff sold and delivered to the defendant, and the defendant accepted and received, the five car loads of timber described in the complaint; that the timber consisted of hickory timber for felloes and pieces for spokes, and of oak lumber; that it was agreed between the parties that the hickory timber should be inspected, culled and classified according to quality, and that all the timber should be paid for at the following rates, railroad freight from Martinsville to be deducted, to wit: For first class felloe strips, 11 cents each; for second class felloe strips, 7 cents each; for first class spokes, $15 per thousand; for second class spokes, $8 per thousand; for oak lumber, best quality, $25 per thousand feet; that the defendant had paid on said five car loads of lumber the sum of $700.

The real question upon the trial was the value of the timber thus sold and delivered, and that involved the inquiry as to the relative qualities of the different portions of it, and a proper classification of it under the agreement above stated.

Woodburn Sarven Wheel Company *v.* Philbrook.

The plaintiff claimed, and introduced evidence to show, that he was requested by the defendant to inspect, cull and classify the timber before placing it on the cars ; that he did inspect the same, and fairly culled and classified the hickory timber, and measured the oak lumber before each kind of such timber was shipped.

The defendant denied that the plaintiff had been requested to inspect the timber, and claimed that it had been inspected, culled and classified by its own employees, after it was received at Indianapolis, and that its employees, being skilled in such work, had made a full, fair and correct classification and measurement of the timber.

The value of the timber, estimated by the plaintiff's classification, exceeded the value put upon it by the defendant's classification by more than $300.

Under these circumstances it was for the jury to determine the aggregate value of the timber upon the evidence which was submitted to it.

There was evidence adduced upon the trial fairly tending to sustain the verdict, and that leaves us without any reason for disturbing the verdict upon the evidence.

The defendant, however, as the appellant here, contends that the court erred in permitting the plaintiff to introduce evidence tending to show that he was authorized to inspect, cull and classify the timber before putting it on the cars to be shipped, as such evidence tended to prove that the plaintiff at the same time occupied the relation of vendor to, and agent for, the defendant in the same transaction, a duplex and inconsistent relation not sanctioned by public policy. But the evidence, objected to as above, did not, it seems to us, tend to prove the double and inconsistent relation thus hypothetically imputed to the plaintiff.

As we construe that evidence, it, in its legal effect, simply tended to prove an agreement on the part of the defendant to take the timber upon the plaintiff's representations as

to the quantity and quality shipped by him. It was competent for the defendant to make such an agreement, and, as thus construed, we see no error in the admission of the evidence tending to prove an agreement on the part of the defendant to so take the timber.

Other questions are made upon the admission of evidence, but the discussions upon them are very general in their character. The record, too, is very voluminous. These circumstances, taken in connection with very meagre references to the record in many instances, render it impracticable for us to enumerate and define the precise questions intended to be presented.

We are, at all events, unable to see that any injustice was done to the appellant by the rulings of which complaint is made.

It is also contended that the court erred in refusing to submit to the jury certain interrogatories presented in behalf of the defendant, but the applicability of any of those interrogatories to any material portion of the evidence has not been made apparent. We must hence assume that the court did not err in refusing to submit those interrogatories to the jury.

No good reason has been shown for a reversal of the judgment.

The judgment is affirmed, with costs.